We will hear argument next in case number 24-1035 in Re Shalovaloff. How are you pronouncing it? You would know. Correct me. Oh, it's Shavovaloff. Shavovaloff, okay. May it please the court, I invite you to ask any questions you have. The missile that I received from the clerk says that you're already familiar with the case. So what's important for you? For me, the major thing is anticipation. With the issue of anticipation resolved in the patent he's in favor, I can go forward with claims one through five. Without anticipation resolved, there's a few limitations, to say the least. This is a patent application 173604. This is my understanding of the way it's referred to. Of a mirror mounted at eye level providing a rear view. Why do you think Anderson is not anticipatory? Because it doesn't show a mirror that blocks the vision of one eye. Like this. So a person can see forward. And a person can see forward with a mirror blocking the view to the rear of my design. And Anderson seems to be an attempt to get a compound patent. And you think that that limitation you're relying on in your claim is the one that says positionable for use in front of one eye? Yes, your honor. Could something be positionable for use in front of one eye without blocking it? That's my contention.  This small item can be mounted on a cap so that it blocks the eye on the left. Let's say you're looking forward with the right eye. And it provides a view to the rear that a person can be confident, provides him enough information so he doesn't get hit by a truck. And that's the whole idea. The Anderson application seems to, if you take a look at his first figure, it has a mirror mounted not in front of the eye. And consequently doesn't have the same machine. And I can't tell what machine he has. He has simply a bunch of things like being given a Lego box and coming up with some idea for some useful thing from it. If you take a look at the, like I say, the first figure of his patent application. So does this argument depend on the clause positionable for use in front of one eye? In front of one eye, which I describe in my specifications. And what does the, do you have the board's opinion in front of you? I have his opinion. What does the board say about the, how Anderson teaches that element? Let's see, I have specifically here. They recite what the PE said. And the PE says that it is implicit that one have visibility forward. And that said to me that the PE was not familiar with my claim. Well, certainly in your claim, at least one eye has to be able to see forward. Otherwise, you're going to have a problem. Yes, Your Honor. The right eye can see around the mirror to the left. So where is the lack of substantial evidence to support the examiner's understanding of Anderson on that point? That it is implicit. The operator using the Anderson device is still able to move forward, so they must be able to see. They can see, but they don't have the view with the right eye at the same time that my machine provides. And N. Ray Morosa says that the examiner has to come forward. I call Morosa, N. Ray Morosa. It's this circuit's opinion in 2013 that once I challenge the assertion that there is anticipation, the patent examiner has to come back with something about how it can be functional or operational. And I think that the PTAB disregarded that assertion. I said at Appendix 388, as described, applicant intends it cannot be determined that the mounting system would be functional in actual use. And I also said in my specification, what in front of one eye meant. In front of one eye, how to aim the device. You can actually see part of one eye. And that's what distinguishes my application from the Anderson application. Am I clear with what I'm saying here? Whether or not it comports with the law? Your view is that there wasn't appropriate consideration of the claim limitation, saying that the mirror part is mounted in front of an eye. Yes, ma'am. Yes, Your Honor. Do you know what the examiner said? You have the board saying the examiner is correct. Do you recall what the examiner said and relied on in Anderson? No. Except that it was implicit with a mirror, let's say a bicycle mirror, to be able to see forward. That's what he said. But your view is it doesn't matter. Your claim requires that something be positioned in front of the eye. Your Honor, I think it was a tortured evaluation beyond what would be reasonable. And I think that was error in itself. And do you happen to have in front of you where in your appeal to the board you focused on this claim element, be positioned in front of? It's in my specification. No, no. I'm talking about what you argued to the board. Yes, Your Honor. I'm not familiar. I read the opinions. But in that aspect, I can't tell you right here right now. I could take up more of your time. That's okay. Why don't we hear from the government and then you'll get some rebuttal time. If I may, there's a couple other things. All right. Quickly. A matter of indefiniteness is also raised by the board. The indefiniteness says that planar is an indefinite term. I think it's the idea that you have a claim that says there's a planar element that comprises a bent element. And that's where the indefiniteness comes in. It's really just a matter of modifying those claims a little bit that would overcome that. I'm fairly certain. Well, I think it's clear in the record that at least one supervisor thought I should put in a bendable mirror. But the reason why the claim says planar is because it starts out as planar. Figure one is planar. If you take a look at the patentee application, which is my application, it's planar. And it's planar for a reason. But what about if you—I don't want to sit here and tell you to write your claims. But you've got a one-piece planar mirror service further comprising a bent tab. And so to have a planar mirror service comprise a bent tab is inconsistent. Inconsistent. Right? I agree. And so if you said a planar mirror service and then a bent tab, it doesn't have to be part of the planar mirror service. So it's a separate element or attached to it. That would solve your indefiniteness problem. Well, since that is an issue, I agree. Right. Okay. Thank you. But if this was a suggested amendment that apparently you chose not to make? At the time, because every time I made an amendment, it seemed that the prosecution process got longer with something else. And the only way to be certain that I could resolve this was to raise this and the big question, which was anticipation. And I don't completely agree with the presumptions here about a patent. Or not the patent, the presumptions about something that is already a patent, an enablement, I do agree with. But a publication and a patent application can be a publication. The presumption, I think, MORSA dealt with once functionality or operability is challenged. And to have the PTAB make up its own rules and disregard MORSA allows an agency to disregard a court opinion. And the patent office, the PTAB, also said that the absence of a challenge by an application that had been abandoned could be evidence that it was functional. And I don't think that that is an appropriate precedent for the PTAB as an agency to set up for themselves, particularly in light of NRA MORSA. And I think with the recent decision by the U.S. Supreme Court in Bright and the recent challenges have raised that issue also. So I'll take your suggestion and allow the patent office to do what they need to do. Okay. Good morning, Your Honors, and may it please the Court. I'd like to just quickly address the enablement issue since that was the last thing we discussed. Why don't you start with Anderson, would you? Sure. Okay. The Anderson appellant has not pointed to any claim limitation in Anderson that's – claim limitation in Claim 1 that Anderson doesn't read on. What about – he argues that it's – that Anderson doesn't teach that there's a mirror surface or a bent tab, or yeah, I guess it's the mirror surface, positionable for use in front of one eye. This is the blocking the eye that we just discussed now. That was not brought up as an argument in front of the Board, so the Board didn't have a chance to discuss whether positionable in front of the eye has to or doesn't have to block the vision of the eye. In fact, there is a claim limitation at the end of Claim 1 that says – So what about just positionable for use in front of the eye without blocking? Forget about the blocking, but just that it sits – where it sits is in front of the eye. Yes. Anderson functions a lot like the mirror that – with a tab where it sits on a halo frame that's mounted with a tab in front of one eye. Would you have a particular page, either a figure or some description in the specification that would support that Anderson positions in front of the eye? Yes. Well, we can first just quickly look at the first page of Anderson, which is on Appendix 656, and that shows a helmet with a halo system. And in the abstract, in sort of the middle of the abstract, Anderson says that it's a rear-view mirror component, is slidingly positioned in the halo band, adjustably oriented to provide it rearward view to the wearer of the headgear. So it has to be in front of the eye. And you're saying when it slides, it can slide forward? Yes. Oh, go ahead. If you don't mind looking at figures 9A through 10B, you can see the halo in 9A and 9B alone with – that's sort of on a cap in 9B. And then in the rest of the figures, you can see how it extends in front of the front of the cap. And then there is some – Anderson describes the mirror and headgear in paragraph 13. That's on 668. And in paragraph 13, it says the objectives of the present invention are fulfilled by providing a system for retaining and adjustably positioning a rear-view mirror on a helmet or other item of headgear. The system includes a flexible, resilient halo band of clear polymer plastic, et cetera, removably attachable at each end thereof to the sides of the helmet and extending radially around the front of the helmet across the field of view. Again, that's it. Appendix 668. Starting with the examiner, what did the examiner say about this particular element of the claims and their application to Anderson? On Appendix 404, that's the final office section, the full paragraph – the second full paragraph is where the examiner essentially maps the claim to the Anderson reference. And let me just see. At the very – Inherent? Yes. Positionable for use in front of the one eye, inherent since it's viewable by the user. Exactly, yes. And as you can see from the figures and the description, Anderson does sort of function similar to the way it's described in the 604 specification where the mirror is in front of the person. Okay, so the examiner says this, and then what happens in the PTO proceedings? So the – This is the final office action, and then there's the appeal, right?  And does the appeal brief take issue with this? The appeal brief did not take issue with this limitation at all. And would it be – and the examiner's answer, which then follows, doesn't get back into this point? That's correct, because there is no argument, and so it is forfeited. There's no argument about that claim limitation. There was some argument about the enablement issue, but not that claim limitation. And on appeal, there's some argument about three different claim limitations, one of which is this one, and those other two were also not argued at the board. Just – I'd like to address the indefiniteness rejection just quickly. The board properly found that the planar surface comprising within it a bent tab renders the claim indefinite. Even read in the light of the specification, this contradiction isn't cured, and so it doesn't apprise the public of the boundaries of what's claimed. And the applicant had some opportunity to amend and did not amend. Does that opportunity still exist? No, although there is always opportunity to file a continuation before this court opinion is mandated. So a continuation application would have to be filed before this court decides this case in order to keep the priority date? Correct. Is it before the mandate issues or before the opinion issues? I believe it's before the mandate issues, Your Honor. Did you want to say anything about MORSA? We heard repeated reference to it today. My response is that this court's case law in Antwerp Media and Amgen has held that there is a presumption of enablement and an anticipating reference, and the appellant must make a non-conclusory argument that it is not enabled before the examiner has to respond to it. And here, the board determined that the arguments were just conclusory, that it didn't have any Wands factors in it, and didn't make any real argument that the Anderson reference was not enabled. Are there no other questions we asked before? Thank you. So I have three minutes reserved for rebuttal. But you don't get all three minutes because you used some of it. You get two minutes and 36 seconds. Come on, it says it right there on the lectern. Anyway, MORSA is a 2013 This Circuit case. It comes after Amgen and Antwerp. And what it says appears in the MPEP as a footnote. So it's not as if the patent examiner could claim that it didn't exist. It's in the MPEP. I checked recently. They're updated. MPEP has a citation to the case. So I think it applies here. And if the PTAB addressed issues that weren't properly addressed in my brief, which is quite possible. This is my first patent application, and I don't hold myself out as a registered patent attorney. But if they addressed it in their opinion, I think it was susceptible of being argued here on the appeal. If there's an argument that I waived something, then there's an argument that there wasn't such a waiver in my appellant's brief to raise an issue that the PTAB could address. So there you go. That's it. Okay. Thank you very much. Thank you, Justice. Thanks to all counsel. Case is submitted. That completes our business for today.